ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Assessment and Training Solutions ) ASBCA No. 61047
  Consulting Corporation )
)
Under Contract No. H92240-14-P-0155 )

APPEARANCE FOR THE APPELLANT: James S. DelSordo, Esq.
  Argus Legal, PLLC
  Manassas, VA

APPEARANCES FOR THE GOVERNMENT: Jeffrey P. Hildebrant, Esq.
  Air Force Deputy Chief Trial Attorney
  Phillip E. Reiman, Esq.
  Lt Col Nathaniel H. Sears, USAF
  Lori R. Shapiro, Esq.
  Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE CLARKE ON THE GOVERNMENT'S MOTION FOR RECONSIDERATION

The Air Force (AF)/Navy[1] timely moves the Board to reconsider[2] its 3 October 2017 decision sustaining in part Assessment and Training Solutions Consulting Corporation's (ATSCC's) appeal and awarding ATSCC $50,637.08. *Assessment and Training Solutions Consulting Corp.*, ASBCA No. 61047, 17-1 BCA ¶ 36,867. The decision was issued pursuant to Board Rule 12.3. We deny the motion.

## DISCUSSION

*Standard for Reconsideration*

The Navy must demonstrate a compelling reason for the Board to modify its decision. *J.F. Taylor, Inc.*, ASBCA Nos. 56105, 56322, 12-2 BCA ¶ 35,125. The standard we apply for reconsideration is "[t]o prevail on reconsideration, the moving party must generally establish that the underlying decision contained mistakes in our findings of facts or errors of law or that newly discovered evidence warrants vacating our decision." *DODS, Inc.*, ASBCA No. 57667, 13 BCA ¶ 35,203 at 172,711.

---

[1] This was a Special Operations Command (SOCOM) contract for the Navy to conduct training on commercial vessels, however, AF trial attorneys represent SOCOM.

[2] The motion is styled a "Motion for Partial Reconsideration."

Motions for reconsideration are not intended to provide a party with an opportunity to reargue issues previously raised and denied. *CI², Inc.*, ASBCA No. 56257, 15-1 BCA ¶ 35,829 at 175,194.

*Contention of the Parties*

The Navy's central argument is that the Board erroneously applied the common law of bailment presumption of negligence under the facts of this case.[3] The Navy contends that the written contract should be enforced over the common law and that the Navy did not have exclusive possession of the charter boats based on periodic maintenance requirements of the bailor, ATSCC.

ATSCC argues that the Navy presents no new arguments and that the common law presumption was fully covered in the original decision. Therefore, the Navy is not entitled to reconsideration.

*Common Law of Bailment Presumption*

The decision relies upon a common law of bailment presumption we discussed as follows:

> The law of bailment imposes upon the bailee the duty to protect the property by exercising ordinary care and to return the property in substantially the same condition, ordinary wear and tear excepted.... When the government receives the property in good condition and returns it in a damaged condition, a presumption arises "that the cause of the damage to the property was the Government's failure to exercise ordinary care or its negligence." *Mohammad Darwish*, 00-2 BCA ¶ 31,114 at 153,672; *International Automotriz*, ASBCA No. 59665, 15-1 BCA ¶ 36,174 at 176,513.

*ATSCC*, 17-1 BCA ¶ 36,867 at 179,632.

*The Alleged Errors of Law*

The Navy contends the presumption does not apply and thus the Board's reliance upon it is an error of law:

---

[3] The Navy does not discuss Judge Prouty's concurring decision stating that the record supports a finding of negligence without reliance on the presumption.

2

> Application of this common law presumption constitutes a two-fold error of law. First, the express terms of the subject Contract require that negligence be *proven,* while the common law bailment rule affords that negligence may be presumed. Second, the Government did not exercise exclusive control over the bailed vessels and exclusive control is a prerequisite for the presumption to arise.

(Gov't mot. at 8)

The Navy misconstrues the relationship between the contract language and the presumption. The presumption serves to satisfy the bailor's obligation to prove negligence and shifts the burden to the bailee (Navy) to overcome the presumption.

The Navy emphasizes that the presumption does not arise in all cases. We agree. In *Mohammad Darwish Ghabban Est.,* ASBCA No. 51994, 00-2 BCA ¶ 31,114 the Board stated, "The Government's return to the contractor of bailed property in a state unfit for service *may* give rise to a claim for damages." *Id.* at 153,672 (emphasis added). The word "may" means just what the Navy argues. For example, if the bailor has sufficient access to the bailed item(s), access that could cause or contribute to the damage, the presumption would not arise. See the discussion below, particularly the facts of *United States v. Mowbray's Floating Equipment Exchange, Inc.,* 601 F.2d 645, 647 (2d Cir. 1979).

*Terms of the Contract*

ATSCC's contract included a clause that requires ATSCC to bear the cost of repairs "unless it can be proven that such repairs were due to negligence or willful damages caused by the government." *ATSCC,* 17-1 BCA ¶ 36,867 at 179,628.

The Navy argues, "Where there is a written bailment contract, the assignment of liability for loss or damage is determined by the provisions of the contract, rather than by common law" (gov't mot. at 6). This is only the case when the written contract and common law differ. In that case the written contract is enforced over the common law. We discussed the situation where the written contract and common law are essentially the same in the decision:

> In this case, contrary to the Navy's argument, the criteria for government liability are the same under the common law of bailment and the express contract—negligence. The Board has applied the common law presumption when an express written contract exists if the common law is

3

consistent with the written contract. [*Mohammad Darwish*, 00-2 BCA ¶ 31,114 at 153,672] (we construe the language used here as no more than an expression of the common law liability of the bailee).

*ATSCC*, 17-1 BCA ¶ 36,867 at 179,632.

We relied upon the Board's decision in *Mohammad Darwish* where we applied the presumption even though there was a written contract where the contract and presumption imposed the same negligence standard. The cases cited by the Navy do not contradict *Mohammad Darwish*. The Navy fails to explain why we should not follow our decision in *Mohammad Darwish*.

The Navy relies on three cases in support of its argument that only the express contract applies: *Cramer Alaska, Inc.*, ASBCA No. 39071, 92-2 BCA ¶ 24,969; *H.N. Bailey and Associates*, ASBCA No. 29298, 87-2 BCA ¶ 19,763; and *Universal Maritime Service Corp.*, ASBCA Nos. 22661, 22804, 81-1 BCA ¶ 15,118 (gov't mot. at 6-7). *Cramer Alaska* addressed the AF's failure to return a "655-B loader" in accordance with the written contract and does not involve damage and the presumption as the Navy suggests. *H.N. Bailey* deals with the loss of roller bearings, government-furnished property, and the Board found, "In this case we have been unable to conclude that appellant had the control and custody of the bearings alleged to be missing or, indeed, that these bearings were in fact delivered to appellant." *H.N. Bailey*, 87-2 BCA ¶ 19,763 at 100,004. The case does not involve damage and the presumption as the Navy suggests. *Universal Maritime Service* also deals with a case where the government had exclusive control of a warehouse where lost items were stored at night and on weekends. The Board held, "Inasmuch as the Government has not shown that the cargo was lost during the hours when it was in the custody and control of appellant, the inference of negligence rule is not for application." *Universal Maritime Service*, 81-1 BCA ¶ 15,118 at 74,792-93. These cases do not contradict *Mohammad Darwish*.

*Proof of Negligence*

The Navy argues, "where a bailment contract requires proof of the bailee's negligence, the presumption may not be implied and the bailor must provide proof of actual negligence of the bailee" (gov't mot. at 7). This is too simplistic a characterization of the law, ignores *Mohammad Darwish*, and is a repackaging of the Navy's argument discussed above. The Navy relies on two cases as support of its proposition: *Analog Precision, Inc.*, ASBCA Nos. 31277, 32877, 87-2 BCA ¶ 19,804; and *Elro Swindle d/b/a Aircraftsman, Inc.*, ASBCA No. 26964, 84-1 BCA ¶ 17,172. The *Analog Precision* decision dealt with computer equipment damaged during shipment. The Board found, "Even if the Government, as bailee, is initially presumed

4

to have been negligent in returning the equipment in a damaged condition, the evidence produced by the Government, as shown by the findings, rebuts that presumption insofar as preparation for shipment is concerned." *Analog Precision*, 87-2 BCA ¶ 19,804 at 100,170. *Analog Precision* implicitly supports our decision in *ATSCC*. In *Aircraftsman*, the issue was liability for an aircraft accident. The Board found that the pilot was not negligent and that the bailor did not sustain its burden of proof. However, the Board does not discuss the presumption and we do not agree that this decision conflicts with *Mohammad Darwish*. In *Mohammad Darwish*, just like in *ATSCC*, the contract included a clause requiring proof of government negligence, yet this Board imposed the presumption because the contract's negligence standard was the same as the common law presumption. *ATSCC*, 17-1 BCA ¶ 36,867 at 179,632.

*Exclusive Possession*

The Navy argues, "The presumption of negligence may not be applied where the bailee's possession of the property was not exclusive to that of the bailor" (gov't mot. at 7). We agree with this as a general proposition, but the Navy's interpretation of exclusive possession is too narrow.

The Navy relies on several cases in support of its argument. The Navy cites *Mowbray*, 601 F.2d at 647 ("[I]t is established law that no inference of negligence against the bailee arises if his possession of the damaged bailed property was not exclusive of that of the bailor."). While the quote is accurate, the Navy ignores the facts of *Mowbray* where a 115-foot, flat-bottomed barge (the Victor) sank while moored in a berth owned by Ellis, the bailee. The bailor's argument was that Ellis was presumed negligent in the sinking of the barge. The problem was that the bailor's employees had significant access to the barge. The Court's decision bears repeating:

> Throughout the time that the Victor was berthed at the wharf, Atmanchuck [bailor] and his agents—not Ellis—[bailee] repaired and overhauled the vessel. The wharf was not enclosed or fenced off; Atmanchuck had unimpeded access to the Victor. No request for permission to board her was made of or required by Ellis. In fact an employee of Atmanchuck was on board the vessel earlier in the evening on the very night the vessel sank.
>
> The reason for the rule that a bailee who fails to return goods or returns damaged goods to the bailor has the obligation of rebutting an inference of negligence is that normally the bailor has no way of knowing what happened to the goods entrusted to his bailee. R. Brown, The Law of Personal Property § 87 at 359 (2d ed. 1955). The appellant

5

here was obviously under no such disadvantage. He and his employees enjoyed daily access to the vessel which they were repowering.

*Id.* at 647.

Similarly, ATSCC had no way of knowing how the Navy was operating the vessels because ATSCC was not involved in the training. Therefore, application of the presumption was appropriate. There is no similarity between bailor's access in ATSCC and that in *Mowbray*. The Navy also cites *Analog Precision*, 87-2 BCA ¶ 19,804 that we distinguished above.

Our ATSCC decision discusses "exclusivity" as follows:

> The Navy argues that the common law presumption does not apply because the Navy did not have exclusive control of the FS and LBV. It bases this argument on ATSCC's obligation to preform quarterly preventive maintenance, yet states that ATSCC had "regular and frequent access to the vessels in order to perform and coordinate maintenance and repairs as required by the PWS." (Gov't reply br. at 4) We do not agree that ATSCC's obligation to maintain the vessels amounts to "frequent access" sufficient to avoid the presumption. The damage to the FS port engine occurred during Navy operations and training and ATSCC did not participate in the Navy's training. Accordingly there is a presumption that the damage was caused by the Navy's negligence.

*ATSCC*, 17-1 BCA ¶ 36,867 at 179,633.

Simply put the Navy presents no evidence that ATSCC's quarterly maintenance had any connection to the engine failure. Indeed, the record supports the conclusion that the damage occurred during Navy training operations when the Navy had exclusive control of the vessel. *ATSCC*, 17-1 BCA ¶ 36,867 at 179,628-31, findings 3, 8-10, 16-19. The Navy's interpretation of "exclusive control" is too narrow. The Navy would have us conclude that any access to a bailed item by a bailor, even access that has nothing to do with the loss or damage, is sufficient to invalidate the presumption. That is not what we found in *Mowbray* and *Universal Maritime Service* cited by the Navy and discussed above. Apparently the Navy would contend that the presumption would not apply to a bailment of an automobile damaged in an accident because the car had routine maintenance at the dealership. None of the cases cited by the Navy support such a narrow interpretation.

6

*Engine Logs*

The Navy argues that the discussion of engine logs in the decision is, "the equivalent of imposing a legal obligation that does not exist in the Contract" (gov't br. at 10). The decision does no such thing. The question here is if the Navy operated the engines in an overheated condition that could cause the manifolds to crack. The Navy entered several logs into the record indicating that in July 2014 it did operate Free Spirit with overheated engines. *ATSCC*, 17-1 BCA ¶ 36,867 at 179,629, finding 8. The Navy set itself up for our decision by presenting testimony that hourly inspections of the engine were conducted during training and the results entered in logs kept on the vessel. *Id.* at 179,630-31, finding 18. These logs would affirmatively answer that question one way or the other. Whether these logs were required by the contract or not is irrelevant – according to sworn testimony of SBC Alb hourly checks were done and log books were filled out and kept on the vessel. *Id.* As explained in the decision, the Navy entered numerous logs into the record but not the ones leading up to and including the 6 August 2015 engine failure that might rebut the presumption. Testimony, unsupported by contemporaneous records that the Navy said existed, was not enough.

## CONCLUSION

The Navy failed to prove that the decision's reliance on the common law presumption was legal error. The motion is denied.

Dated: 6 March 2018

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur in result (see separate opinion)

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

7

## OPINION BY ADMINISTRATIVE JUDGE PROUTY

I concur in the result. As stated in my concurrence with Judge Clarke's original decision, I respectfully disagree with the reasoning in that opinion regarding the application of the presumption of negligence from bailment law. My conclusion that a finding of government negligence is supported by the facts, even without this presumption, however, is not altered by the government's motion, which presents no new or compelling arguments upon the matter and expressly limits itself to challenging Judge Clarke's decision upon the presumption of negligence issue.

Dated: 6 March 2018

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61047, Appeal of Assessment and Training Solutions Consulting Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8